FILED
2023 May-26 PM 04:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
CENTRAL DIVISION

| | |
|---|---|
| REGINA WHITE,<br><br>Plaintiff,<br><br>v.<br><br>SUNBRIDGE GARDENDALE HEALTH CARE CENTER, LLC D/B/A MAGNOLIA RIDGE,<br><br>Defendant. | Civil Action No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES

COMES NOW, Regina White (now, "Plaintiff") by and through her undersigned counsel, and files this, her Complaint for Damages, and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action for damages, and reasonable attorney fees against Defendant SunBridge Gardendale Health Care Center, LLC d/b/a Magnolia Ridge (now, "Defendant") for violations of her rights under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 et seq. ("ADA"), Title VII of the Civil

Rights Act of 1964, as amended ("Title VII"), the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et. seq.

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331, 42 U.S.C. § 2000e-5(f), and 28 U.S.C. §§ 1343.

3.

The unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391, 42 U.S.C. §1981, and 42 U.S.C. §2000(e)-5(f), venue is appropriate in this Court.

## ADMINISTRATIVE PROCEDURES

4.

Plaintiff has fulfilled all conditions necessary to proceed with this cause of action under Title VII, the ADA, the FMLA and the ADEA. Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 31, 2021; the EEOC issued its Notice of Right to Sue on February 28, 2023.

5.

Plaintiff timely files this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

**PARTIES**

6.

Plaintiff is a female citizen of the United States of America and is subject to the jurisdiction of this Court.

7.

At all times relevant, Defendant was qualified and licensed to do business in Alabama, and at all times material hereto has conducted business within this District.

8.

At all such times, Plaintiff was an "employee" of Defendant as defined under the ADA at 42 U.S.C. § 12111(4). At all such times, Plaintiff was an "employee" of Defendant as defined under the ADEA. During all times relevant hereto, Defendant had employed fifteen (15) or more employees for the requisite duration under the ADA. Defendant is therefore covered under the ADA in accordance with 42 U.S.C. § 12111(5).During all times relevant hereto, Defendant has employed fifteen (15) or more employees for the requisite duration under the Title VII. Defendant is therefore covered under Title VII in accordance with 42 U.S.C. § 2000e(b).Defendant is now

and, at all times relevant hereto, has been a for-profit entity engaged in an industry affecting commerce. During all times relevant hereto, Defendant had employed twenty (20) or more employees for the requisite duration under the ADEA.

9.

Plaintiff is an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq.*, in that she had been employed with Defendant for more than 12 months and worked more than 1250 hours in the 12 months preceding her request for FMLA. During all times relevant hereto, Defendant has employed fifty or more employees, within a 75-mile radius of Plaintiff's employment, for the requisite requirements under the FMLA.

10.

Defendant may be served with process by delivering a copy of the summons and complaint to its Registered Agent, located at 641 South Lawrence Street Montgomery, Al 36104.

## FACTUAL ALLEGATIONS

11.

Plaintiff began working for Defendant on or about July 31, 2017, as a Director of Nursing. The plaintiff had no poor performance reviews or disciplinary actions after being hired and prior to her termination.

12.

Plaintiff is a person of African ancestry, colloquially referred to as Black and was over the age of forty (40)

13.

Plaintiff is a person with one or more disabilities that substantially limit major life activities, specifically degenerative disc disease and neuropathy. Plaintiff can perform the essential functions of her job.

14.

In January 2021, Plaintiff informed Lucretia Patterson, the Center Executive Director, that she required surgery in February 2021, related to her longstanding back injuries and disabilities.

15.

Defendant had hired a new nurse practice educator in February 2021, and informed Plaintiff that it was not an appropriate time to take her leave. Consequently, Plaintiff rescheduled her surgery for May 24, 2021.

16.

At the time Plaintiff initially notified Defendant of her need for surgery, Defendant did not provide Plaintiff with any FMLA paperwork after her notification of her surgery for a serious health condition.

17.

Defendant finally provided Plaintiff with this FMLA paperwork in May 2021.

18.

Plaintiff and Plaintiff's physician filled in the paperwork, and the request for FMLA was approved. Plaintiff was out on FMLA leave from May 24, 2021, to August 9, 2021.

19.

Plaintiff returned to work on August 9, 2021, as scheduled. She was met by Laurie McCauley, the Vice President of Operations, who informed her that she could not return to work because she didn't have Plaintiff's FMLA paperwork.

20.

Plaintiff reiterated that Defendant had already received and approved her paperwork.

21.

Plaintiff offered to re-send the documentation to prove that her leave was approved.

22.

At this time, Plaintiff was also told that Defendant was investigating an incident regarding Plaintiff authorizing an LPN to do a PICC Line without supervision. Plaintiff did not authorize the alleged action.

23.

Plaintiff asked when this incident occurred, and McCauley would not answer.

24.

On or about August 12, 2021, Plaintiff attended a Zoom meeting with the Compliance Officer, Ms. Melissa Schillenberg, and a Corporate Human Resources employee, Ms. Becky Stennett.

25.

Plaintiff was informed this Zoom meeting was to evaluate her performance and investigate her conduct.

26.

At the start of the meeting, Plaintiff was asked many questions about her FMLA. Plaintiff provided dates and the documentation for her approved leave.

27.

Plaintiff was then asked about certain incidents of her alleged misconduct, none of which had occurred. Plaintiff was accused of "allowing" a nurse to wear a Black Panther t-shirt.

28.

Plaintiff was not involved in this incident – several employees complained that a black coworker nursing assistant wore the t-shirt, and reported this to Mr. Tom Kent, the administrator.

29.

Mr. Kent recognized that the shirt was from the Marvel movie, and not the political group. Mr. Kent also declined to discipline the nursing assistant for wearing this t-shirt. Plaintiff had no involvement in this incident. The only connection Plaintiff had to this incident was that she is black. Furthermore, the incident had happened back when the Marvel movie was released in 2018.

30.

Stallenberg and Stennett then asked Plaintiff about her relationship with the other nurses. Plaintiff said there were no problems that she was aware of. Neither Stallenberg nor Stennett could explain or describe any inappropriate action that Plaintiff took with her coworkers.

31.

Stallenberg and Stennett then asked about Plaintiff's relationship with the medical providers. No explanation for their inquiry was provided to the Plaintiff, other than a reference to one meeting Plaintiff had with the medical providers where they wanted Plaintiff to fire an employee, Ms. Elissa Nicole Bundy. Plaintiff told Stallenberg and Stennett that she had followed the company progressive discipline policy on that occasion, as she was required to do.

32.

Stallenberg and Stennett then asked Plaintiff if she had been told that she was unapproachable. While Plaintiff was the trainer for other nurses, she has never been told she was unapproachable, nor was she ever disciplined for her communication style since being employed on or about July 31, 2017.

33.

Plaintiff was then asked if the nurses were trained in the Third Eye Program. Plaintiff was not responsible for this portion of their training; the Nurse Practice Educator was. No concerns had ever been raised to Plaintiff previously about this training.

34.

Following this meeting, Plaintiff did not hear back from Defendant until she was terminated on or about August 23, 2021.

35.

Employees who were not black, who did not have a disability, who were under forty (40) and who did not request and take FMLA, were given progressive discipline for any alleged issues. Plaintiff was immediately terminated.

36.

Plaintiff was then replaced by a younger, Caucasian individual, who did not have a disability, or took FMLA.

37.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text. Plaintiff was treated less favorably in the terms or conditions of employment than others outside of her protected class, i.e., African-American. Despite Plaintiff's complaints, Defendant did not attempt to rectify the situation, and instead terminated Plaintiff's employment.

38.

Defendant treated other employees outside of Plaintiff's protected class, i.e. those younger than forty (40), more favorably. Plaintiff was an individual with a disability, as defined by the Americans with Disabilities Act, as amended.

39.

Plaintiff requested a reasonable accommodation of her disabilities.

40.

Specifically, Plaintiff requested medical leave for her to have surgery for her disabilities.

41.

Defendant terminated Plaintiff because she had a record of a disability and/or because it regarded her as disabled and/or because she engaged in protective activity.

42.

But for Plaintiff's disability status and/or request for a reasonable accommodation of the same, she would not have suffered the adverse employment action.

43.

Plaintiff was treated less favorably in the terms or conditions of employment than others outside of her protected class, i.e. non-disabled employees and/or employees who did not request a reasonable accommodation for their disability.

44.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text. Defendant interfered with Plaintiff's rights under the Family and Medical Leave Act by terminating her employment upon returning from medical leave for her own serious health condition.

45.

Defendant retaliated against Plaintiff for requesting and taking medical leave by terminating her employment as a result of requesting and taking FMLA leave.

46.

Others outside the Plaintiff's protected class, i.e. employees not taking and/or requesting FMLA leave, were treated differently.

## CLAIMS FOR RELIEF

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF ADA

47.

Plaintiff re-alleges all preceding paragraphs as if set forth fully herein.

48.

Plaintiff had a physical impairment which substantially limits one or more major life activities including but not limited to moving, lifting, bending, twisting, pushing, pulling, working, and standing.

49.

Plaintiff's physical impairment is a "disability" within the meaning of the ADA, as amended.

50.

Defendant was aware of Plaintiff's disability.

51.

Defendant regarded Plaintiff as having a disability such that she is a person with a disability and/or perceived disability within the meaning of the ADA, as amended.

52.

Plaintiff has a record of having a disability and/or perceived disability such that she is a person with a disability within the meaning of the ADA, as amended.

53.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

54.

Defendant terminated Plaintiff's employment because of her disability, perceived disability, or record of having a disability.

55.

Defendant terminated Plaintiff's employment because of her accommodation request for medical leave.

56.

By terminating Plaintiff's employment because of her disability, perceived disability, or record of having a disability, Defendant violated the ADA, as amended.

57.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text for disability discrimination.

58.

Defendant treated other employees outside Plaintiff's protected class differently.

59.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of this violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 *et seq.*, 42 U.S.C. 2000e et seq. and 42 U.S.C. section 1981A.

60.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

61.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her disability.

62.

As a direct and proximate result Defendant's violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

63.

As a result of Defendant's discriminatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

64.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

65.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

66.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

**COUNT II: RETALIATION IN VIOLATION OF THE ADA, AS AMENDED**

67.

Plaintiff re-alleges all preceding paragraphs as if set forth fully herein.

68.

Plaintiff has a physical impairment which substantially limits one or more major life activities including but not limited to moving, lifting, bending, twisting, pushing, pulling, and standing.

69.

Plaintiff's physical impairment is a "disability" within the meaning of the ADA, as amended.

70.

Defendant was aware of Plaintiff's disability.

71.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

72.

Defendant terminated Plaintiff for requesting an accommodation for her disability and/or perceived disability.

73.

Plaintiff's request for an accommodation of her disability and/or perceived disability constitutes protected conduct under the ADA, as amended.

74.

Defendant retaliated against Plaintiff by terminating her employment on the basis of her request for an accommodation.

75.

Defendant terminated Plaintiff's employment within a close temporal proximity to Plaintiff's accommodation requests.

76.

Defendant's proffered reasons for terminating Plaintiff's employment are a pretext designed to hide Defendant's retaliatory motive.

77.

Defendant's retaliatory actions against Plaintiff were in violation of the ADA, as amended.

78.

Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

79.

As a result of Defendant's retaliatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

80.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

81.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

82.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT III: VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, AS AMENDED

83.

Plaintiff re-alleges all preceding paragraphs as if set forth fully herein.

84.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of her age in violation of ADEA, as amended.

85.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

86.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her age.

87.

As a direct and proximate result of Defendant's violation of the ADEA, Plaintiff has lost wages and benefits.

## COUNT IV: RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

88.

Plaintiff re-alleges all preceding paragraphs as if set forth fully herein.

89.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq.

90.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Plaintiff was undertaken in bad faith.

91.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her race.

92.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected her economic, psychological, and physical well-being.

93.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

## COUNT V: FMLA RETALIATION

94.

Plaintiff re-alleges all preceding paragraphs as if set forth fully herein.

95.

Defendant is an ‘employer’ as defined by the FMLA.

96.

Plaintiff was an eligible employee under the FMLA.

97.

Plaintiff worked at least 1250 hours for Defendant within the 12 months preceding her request for medical leave pursuant to the FMLA.

98.

Plaintiff was employed by Defendant for more than 12 months.

99.

Plaintiff was employed by Defendant at a worksite with 50 or more employees within 75 miles of that worksite.

100.

Because Plaintiff was an eligible employee, Plaintiff was entitled to medical leave and other protections pursuant to the FMLA, 29 U.S.C. § 2601, et seq.

101.

Plaintiff had a medical condition that required Plaintiff to take time off work.

102.

Plaintiff had a serious medical condition as defined by the FMLA.

103.

Defendant received notice of Plaintiff's need for protected medical leave for her medical condition on or about January, 2021.

104.

Defendant terminated Plaintiff's employment because of her request for and the taking of her medical leave, and/or to avoid having to accommodate Plaintiff's respective rights to protected medical leave.

105.

Defendant's termination of Plaintiff's employment was causally related to her exercising her rights to protected medical leave pursuant to the FMLA.

106.

Defendant's termination of Plaintiff's employment for alleged policy violations constitutes unlawful retaliation against Plaintiff for her exercising her rights to protected medical leave under the FMLA, in violation of 29 U.S.C. §2615(a).

107.

As a direct and proximate result of Defendant's unlawful retaliation against Plaintiff, Plaintiff has been damaged and is entitled to the relief set forth in the Prayer for Relief below.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment as follows:

(a) General damages for mental and emotional suffering caused by Defendant's misconduct;

(b) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c) Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(d) Reasonable attorney’s fees and expenses of litigation;

(e) Trial by jury as to all issues;

(f) Prejudgment interest at the rate allowed by law;

(g) Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(h) Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein;

(i) Compensation for lost compensation, back pay, wages and employment-related benefits;

(j) Liquidated damages; and

(k) All other relief to which she may be entitled.

Respectfully, this 26th of May, 2023.

**BARRETT & FARAHANY**

s/ *John E. Tomlinson*
John E. Tomlinson
Alabama Bar No. 4095O78T

*Counsel for Plaintiff Regina White*

2 20th St N, Suite 900
Birmingham, AL 35203
(205) 564 9005
john@justiceatwork.com